UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GUADALUPE RODRIGUEZ and JOSE LOPEZ, on behalf of themselves and as legal guardians and parents of C.L., a minor individual with disabilities,<br><br>Plaintiffs,<br><br>v.<br><br>INDEPENDENT SCHOOL DISTRICT OF BOISE CITY NO. 1,<br><br>Defendant. | Case No. 1:12-cv-00390-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court are two motions related to Plaintiffs' efforts to discover additional evidence relevant to their appeal of an administrative due process hearing conducted under the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1400 *et seq.* Plaintiffs, the parents of C.L., a 14-year-old student suffering from significant intellectual impairment, Autism, and Anxiety Disorder, have appealed a June 21, 2012 decision by Hearing Officer Jean Uranga ("HO Uranga"). The Hearing Officer's Order found the Independent School District of Boise City No. 1 ("BSD") did not violate the IDEA and denied all relief requested by C.L.'s Parents. (Dkt. 16-2.) C.L.'s Parents

appealed that Order to the Court, and, in March 2013, the Court authorized "limited" discovery of "additional evidence" within the meaning of the IDEA. (Dkt. 19.)

Discovery proceeded through the spring and summer of 2013. However, by August, these efforts broke down, leading to the instant motions. Both parties have certified, pursuant to District of Idaho Local Civil Rule 37.1, that efforts were made to meet and confer in good faith before bringing this dispute before the Court. (Dkt. 26-2; Dkt. 30-1 at 6.)

BSD's Motion to Quash Subpoena and For a Protective Order (Dkt. 26), along with its Supplement (Dkt. 27), request that the Court quash subpoenas duces tecum received from C.L.'s Parents by two former District employees—Mary Osborn-Whitney and Laura McCosh—both of whom worked with C.L. during 2011. BSD further requests protective orders to prevent Plaintiffs from: (1) deposing any BSD employees who were available during the administrative hearing and (2) accessing confidential personnel records of BSD employees. (Dkt. 26.)

C.L.'s Parents filed a Motion to Compel, requesting production of "a variety of documents." (Dkt. 30 at 11.) Specifically, they request records related to (a) training or discipline of C.L.'s teacher, Kelsie Badger; (b) documents concerning BSD employee training, discipline, and use of a "quiet room" at Hillside Junior High School; (c) disciplinary or training records for BSD employees related to autism, behavior management, or the use of seclusion and similar techniques; and (d) data, test protocols, test results, and behavior logs for C.L. that were used to prepare reports and summaries regarding C.L.'s classroom behaviors. Some of these records, particularly those

**MEMORANDUM DECISION AND ORDER - 2**

pertaining to BSD employee training and discipline, fall within the ambit of BSD's requested protective orders.

For reasons stated below, the Court will deny Parents' Motion to Compel and grant BSD's Motion to Quash Subpoena and For a Protective Order.

## BACKGROUND[1]

C.L. is a 14-year-old student with multiple disabilities, including Autism. During the 2010-2011 school year, C.L. attended sixth grade at Garfield Elementary School within BSD. C.L. received special education throughout elementary school, subject to an Individualized Education Program ("IEP") under the IDEA from kindergarten through the sixth grade, with the most recent IEP dated December 15, 2010. (Dkt. 1 at ¶ 16.)

In 2011, following the completion of sixth grade, C.L. was transferred to Hillside Junior High School within the Boise School District. C.L.'s attendance at Hillside required a one-hour bus ride to school. (*Id.* ¶ 17.) Plaintiffs' allege that, shortly after beginning junior high at Hillside, C.L. began arriving home noticeably stressed, including an incident in September 2011 in which C.L. arrived home with blood on his arm and reported that a teacher had pushed him and caused him to fall. (*Id*. ¶¶ 16, 17.) In October of 2011, C.L.'s Parents informed BSD in writing that C.L. was experiencing an extreme amount of anxiety related to incidents that occurred at school and that he was refusing to attend school due to his anxiety. (*Id*. ¶ 19.) C.L.'s Parents then requested an IEP meeting to address their concerns. (*Id.*)

---

[1] The following facts are taken largely from the Court's Memorandum Decision and Order entered March 11, 2013. (Dkt. 19.)

**MEMORANDUM DECISION AND ORDER - 3**

C.L. did not attend school from October 14, 2011, until June of 2012. (*Id.* ¶ 20.) In November of 2011, C.L.'s Parents requested that BSD provide C.L. with homebound services. (*Id.* ¶ 21.) The request was rejected. (*Id.*) In December 2011, C.L.'s Parents submitted a letter to BSD from Dr. Joseph Kiehl, who recommended C.L. receive homebound services until BSD developed a plan for C.L. to reintegrate into school. (*Id.* ¶ 22.) BSD again rejected C.L.'s Parents' request in February of 2012. (*Id.*)

In December of 2011, C.L.'s Parents received and rejected an IEP proposed by BSD, which Plaintiffs allege significantly reduced C.L.'s individual development therapy services. C.L.'s Parents filed a Due Process Complaint under the IDEA on February 21, 2012, requesting the Hearing Officer to find that C.L. was entitled to homebound services. (*Id.* ¶ 23.) The issues before HO Uranga were: (1) whether BSD failed to provide C.L. with an appropriate IEP, addressing his anxiety about returning to the school; (2) whether C.L. was entitled to homebound services pending transition back to the school environment; and (3) whether C.L. was entitled to compensatory education to "make up for lost time" during BSD's failure over six months to provide C.L. with any educational services. (*See Pet'rs' Pre-Hearing Br.* at 4-5, Dkt. 16-6.)

After a four-day evidentiary hearing and review of post-hearing briefs, HO Uranga issued her Findings of Fact, Conclusions of Law and Order on June 21, 2012. (Dkt. 16-2.) The hearing officer found in favor of BSD on every issue and denied Plaintiffs' requested relief. Specifically, HO Uranga reached the following five conclusions of law:

**MEMORANDUM DECISION AND ORDER - 4**

1. C.L.'s Parents "failed to establish that BSD has improperly implement[ed] the Student's existing IEP from the beginning of school September, 2011 through October 14, 2011." (*Id.* at 20-21.)

2. C.L.'s Parents did not "establish that BSD failed to provide notice of the October 20, 2011 meeting and failed to encourage parental participation." (*Id.* at 21-22.)

3. BSD did not improperly conduct the October 20, 2011 IEP meeting without the C.L.'s Parents in attendance because they were unwilling to attend. (*Id.* at 22.)

4. BSD "has not violated the IDEA by refusing to provide homebound services because the Student was not qualified to receive homebound services." (*Id.* at 23.)

5. BSD provided an adequate IEP, functional behavior assessment, behavior intervention plan, and plan for reintegration of the student by developing an IEP—with parental involvement—that would place C.L. at "a structured learning center at Les Bois Junior High School with a phased in, short reintegration period." (*Id.* at 23-24.)

In response to these findings, C.L.'s Parents filed this administrative appeal in August 2012. The Complaint alleges HO Uranga committed legal error by: (a) finding C.L. "was not suspended or expelled from school" and was therefore not entitled to

**MEMORANDUM DECISION AND ORDER - 5**

homebound services on those grounds[2] (Dkt. 1 at ¶ 36,); (b) sanctioning BSD's inadequate efforts to reintegrate C.L. into the classroom (*Id.* at ¶ 37); and (c) upholding BSD's decision to not provide homebound services because C.L. could have returned to school. (*Id.* at ¶ 38.) C.L.'s Parents also allege various factual errors in the hearing officer's findings related to C.L.'s credibility as a witness, the reasons for his behaviors at school, whether C.L. perceived being sent to a "quiet room" as punishment, and the reason for his six-month absence from school. (*Id.* at ¶¶ 26-34.) Notably, C.L.'s Parents do not allege the hearing officer erred by excluding evidence or that there were any procedural irregularities during the hearing.

Early in these proceedings, Plaintiffs requested discovery to the full extent allowed by Federal Rule of Civil Procedure 26(b). (Dkt. 14.) Defendant opposed the request and argued that discovery in IDEA appeals is limited by 20 U.S.C. § 1415(i)(2)(C), which requires the court to base its decision on a preponderance of evidence contained in the administrative record and "additional evidence at the request of a party." (Dkt. 15.) The Court considered these arguments in light of decisions by the United States Court of Appeals for the Ninth Circuit that interpret the "additional evidence" provision, and, on March 11, 2013, issued a Memorandum Decision and Order ("March Order") defining the scope of discovery in this case. (Dkt. 19.)

---

[2] Title 20, Section 1412(a)(1)(A) of the United States Code requires a State, as a condition on federal funding under the IDEA, to ensure "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school."

**MEMORANDUM DECISION AND ORDER - 6**

The March Order permitted the parties to conduct "limited" discovery for the purpose of supplementing the administrative record on appeal. (Dkt. 19 at 10.) Underlying this limited scope of discovery is the mandate that the district courts "'be careful not to allow [evidence added to the record on appeal] to change the character of the hearing from one of review to a trial *de novo*.'" (*Id.* at 7, quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993).) The March Order also set a July 31, 2013 goal for the completion of all discovery, (*Id.*), a deadline that later was extended to September 5, (Dkt. 25), and then suspended pending resolution of the instant motions. (Dkt. 33.)

Following the March Order, the parties exchanged discovery requests in late March 2013 and exchanged responses in April. However, in its April 21 response, BSD raised seventeen general objections to Parents' requests, as well as specific objections to each of Parents' twenty-six requests for production. (Dkt. 30-5.) BSD took particular exception to requests for the contents of certain BSD employees' personnel files, specifically, C.L.'s teacher, Kelsie Badger, and two paraprofessionals who had contact with C.L. (*Id.*) C.L.'s Parents responded with a letter relating their concerns about the objections, and the parties eventually met on May 8, 2013, to discuss the dispute. (Dkt. 30-1 at 3.) This meeting led to BSD's disclosure of the full names of three paraprofessionals who worked with C.L.: Marcia Wagner, Laura McCosh, and Mary Osborn-Whitney.[3] (*Id.* at 4.) The names of these individuals were at least partially

---

[3] The instant discovery dispute focuses on Ms. McCosh and Ms. Osborn-Whitney. At the hearing on this dispute, neither party addressed what, if any, information was sought from Ms.

**MEMORANDUM DECISION AND ORDER - 7**

disclosed in discovery at the administrative level—for example, behavior logs in the administrative record are signed by "Ms. Mary" and "Ms. Laura"—but C.L.'s Parents contend this was not enough information for them to identify and subpoena the paraprofessionals. (Dkt. 32 at 2.) The parties discussed using a stipulated protective order to protect information in the personnel files from unauthorized disclosure, but that proposal also failed. (Dkt. 30-1 at 4.)

C.L.'s Parents later attempted to depose Ms. McCosh and Ms. Osborn-Whitney ahead of the Court's July 31 discovery deadline. (*Id*. at 5.) After several unsuccessful attempts to schedule these depositions, C.L.'s Parents, in early August, served subpoenas duces tecum on both paraprofessionals. (*Id.*) BSD's Motion to Quash Subpoena and for Protective Order came shortly thereafter, followed by Parents' Motion to Compel. The Court heard oral argument on both motions on September 6, 2013. (Dkt. 40.)

From the briefing and arguments during the hearing, it was apparent that a "chicken and egg" problem was afoot. In other words, C.L.'s Parents could not determine, absent disclosure BSD would not allow, whether the requested personnel records contain additional evidence within the meaning of the IDEA. To address this concern, the Court ordered BSD to lodge the personnel files of Mrs. Badger, Ms. Osborn-Whitney, and Ms. McCosh for in camera review. (Dkt. 41.) The Court has completed its review of these documents and the matter is now ripe for resolution.

---

Wagner. In addition, one of eighteen documents attached to Parent's Motion to Compel states Parents determined not to take Ms. Wagner's deposition. (Dkt. 30-16.)

**MEMORANDUM DECISION AND ORDER - 8**

DISCUSSION

1.   **Standards for Discovery of Additional Evidence**

The March Order discussed in detail the parameters for discovery in this matter. The crux of the instant discovery dispute is whether the discovery sought by C.L.'s Parents is within the scope of discovery delineated by the Court's Order. The March Order requires that discovery in this case be calculated to lead to a viable motion to supplement the administrative record. (Dkt. 19 at 11.)

A viable motion to supplement the administrative record seeks to add "evidence that is non-cumulative, relevant, and otherwise admissible." *E.M. v. Pajaro Valley Unif. Sch. Dist.*, 652 F.3d 999, 1005 (9th Cir. 2011). Although the determination of what constitutes "additional evidence" is left to a trial court's discretion, the Ninth Circuit has instructed the district courts to "be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993). Further, the *Ojai* court provided the following examples of relevant, non-cumulative, and otherwise admissible evidence: "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.* (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

All of these examples focus on evidence that is either after-acquired or omitted from the record due to some error in the hearing process. Notably absent from the list is

**MEMORANDUM DECISION AND ORDER - 9**

evidence that was available but—for some reason apart from mechanical problems, witness unavailability, or improper exclusion—not introduced during the due process hearing. Allowing a party to introduce new evidence on appeal that it simply failed to introduce below would render the administrative hearing a nullity and convert this proceeding into a trial de novo. Indeed, the Court is mindful that it "should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Id.*

Another critical consideration is whether the discovery is relevant to this proceeding. Discovery in this matter is not an opportunity for free-ranging explorations of tangential issues. Instead, the discovery sought must be "relevant to [an] issue properly before the district court." *S.M. v. Bd. of Educ. of Albequerque Pub. Sch.*, 565 F.3d 1232, 1241(10th Cir. 2009). Only the assignments of error raised in Parents' Complaint are properly before this Court. *See id.* And, just as allowing the introduction of evidence known to but withheld by a party at the administrative level would nullify the hearing and create a trial de novo, so too would supplementing the administrative record with evidence unconnected to errors alleged in the Complaint. After all, the party making the appeal assigns error with full knowledge of the administrative proceedings. For these reasons, the Court limited discovery and gave the party seeking to compel discovery the burden of explaining how the materials sought relate to the assignments of error raised in the Complaint. (Dkt. 19 at 11.)

**MEMORANDUM DECISION AND ORDER - 10**

**2.     C.L.'s Parents' Motion to Compel**

A party may move to compel disclosure of discoverable material, including responses to specific requests for production. Fed. R. Civ. P. 37(a). By default, discoverable material includes "any nonprivileged matter that is relevant to any party's claim or defense." *Id.* 26(b)(1). But the default scope of discovery may be modified by court order, as is the case here. *See id.* As described above, the Court's March 2013 Order clearly limited the scope of discovery in this matter to relevant, noncumulative, and otherwise admissible evidence that directly pertains to the assignments of error in the Complaint.

In their Motion to Compel, C.L.'s Parents take issue with BSD's response to requests for four categories of materials. Specifically, C.L.'s Parents request: (a) "discipline or training records for C.L's teacher, Kelsie Badger, from August 1, 2009 to present"; (b) documentation of BSD staff training or discipline regarding implementation of C.L.'s IEP or use of the "quiet room"; (c) disciplinary and training records for BSD employees regarding autism, behavior management, the use of restraints, the use of seclusion, or the use of other similar techniques; and (d) "raw data, test protocols, test results, behavior logs and other similar documents regarding C.L." (Dkt. 30-1 at 8-11.) BSD objects to all of these requests on various grounds, but primarily argues Parents have failed to articulate how these materials qualify as additional evidence under the IDEA. (Dkt 38.)

With regard to requests (a) through (c) above, during the September 6, 2013 hearing on the instant motions, the Court asked Parents' counsel to identify BSD

**MEMORANDUM DECISION AND ORDER - 11**

employees whose records were sought. Based on counsel's response and the briefing in this matter, the Court ordered BSD to lodge for in camera review "personnel files, for Ms. Kelsie Badger, Ms. Mary Osborn-Whitney, and Ms. Laura McCosh, including any disciplinary records for these employees or former employees of the Defendant Boise School District." (Dkt. 41.) On September 19, 2013, BSD lodged personnel files for Ms. Badger, Ms. Osborn-Whitney, and Ms. McCosh, and the Court has reviewed the all of the records submitted. (Dkt. 43.) The purpose of the Court's in camera review was to simultaneously allay Parents' concern that BSD was unilaterally withholding relevant materials while respecting BSD's contention that the materials sought do not qualify as additional evidence. To the extent the in camera review uncovered relevant, non-cumulative, and otherwise admissible evidence, C.L.'s Parents would be given the opportunity to ask the Court to supplement the record with such evidence.

None of the personnel files contain information that would qualify as additional evidence in this case. In particular, there are no records of disciplinary action against Badger, McCosh, or Osborn-Whitney. Nor is there any mention of use of the "quiet room," seclusion, or restraints. Neither C.L. nor his IEP are mentioned in any of the records. Indeed, these findings by the Court are consistent with the affidavits of Ms. Badger, Ms. Osborn-Whitney, and Ms. McCosh, which BSD attached to its Response to Parents' Motion to Compel. (*See* Dkt. 38-2 (Badger); 38-4 (Osborn-Whitney); 38-5

**MEMORANDUM DECISION AND ORDER - 12**

(McCosh).) Thus, the records BSD could produce in response to requests (a) through (c) above would not provide Parents with relevant additional evidence.[4]

In addition, C.L.'s Parents also request raw data, test protocols, test results, behavior logs, and similar documents regarding C.L. Contending they have had access to only summaries and reports prepared by BSD employees, C.L.'s Parents argue it is "impossible for Plaintiffs or this Court to consider whether those summaries and reports fairly reflect C.L.'s needs." (Dkt. 30-1 at 10.) Further, C.L.'s Parents allege this information is relevant to "the scope of C.L.'s needs, whether appropriate evaluations were conducted, and whether BSD took appropriate steps to address those needs." (*Id*. at 9-10.)

BSD counters, arguing C.L.'s Parents are not entitled to copies of raw data and test protocols. Moreover, BSD notes that Parents are already in possession of the test results and behavior logs. Indeed, the exhibit list for the due process hearing shows that both sides introduced numerous behavior logs and reports. (Dkt. 16-43.) And, although HO Uranga denied Parents' motion to compel production of additional records, including data and test protocols, (Dkt. 16-12 at 2-3), the Complaint does not allege this ruling was in error. Rather, C.L.'s Parents first argued these materials were improperly excluded in the context of this discovery dispute.

C.L.'s Parents have not demonstrated how raw data, test protocols, test results, or behavior logs qualify as additional evidence. HO Uranga admitted and considered a

---

[4] This finding relates to Plaintiff's Request for Production 8, 16, 17, 18, 22, 23, and 24. (Dkt. 30-4 at 10-12).

**MEMORANDUM DECISION AND ORDER - 13**

substantial amount of such evidence during the due process hearing.[5] To the extent C.L.'s Parents believe BSD did not fully disclose C.L.'s educational records, they have not persuasively shown HO Uranga improperly excluded any evidence. Nor did C.L.'s Parents show they articulated on the record the need for such evidence to HO Uranga such that the Court could assign legal error. Instead, Parents only vaguely describe the evidence sought and only briefly address its relevance by broadly paraphrasing every legal error alleged in the Complaint. (Dkt. 30-1 at 9-10.) General labels and speculative conclusions do not satisfy Parents' burden to articulate how the evidence sought is relevant to issues properly before the Court.

Relevance aside, C.L.'s Parents have identified no purpose for this evidence other than to retrospectively rehash or counter summaries and reports in the administrative record. Evidence offered for this purpose is not additional evidence. *See Ojai*, 4 F.3d at 1473. C.L.'s Parents do not seek to compel production of new tests or data developed after the due process hearing. Rather, Parents apparently seek these materials to relitigate the issue of whether the summaries and reports considered by HO Uranga "fairly reflect C.L.'s needs." (Dkt. 30-1 at 10.) In this sense, the data, protocols, logs, and results underlying the summaries and reports in evidence are cumulative of testimony and exhibits already in the administrative record.

---

[5] In particular, C.L.'s Parents presented two exhibits containing logs that detail C.L.'s behaviors from August 24 through October 14. (*Exs.* 103 & 105, Dkt. 16.) It is unclear from Parents' briefs whether they contend additional relevant logs exist and are for some reason being withheld.

**MEMORANDUM DECISION AND ORDER - 14**

After all, raw data, test protocols, and test results can only be interpreted by professionals. At the due process hearing, both sides offered extensive expert testimony and exhibits regarding the reports and summaries, C.L.'s needs, and BSD's efforts to meet those needs. (*See* Dkt. 16-2 at 3-19.) Again, Parents do not allege HO Uranga's denial of administrative motion to compel precluded their experts from challenging how BSD's professionals assessed C.L.'s needs. Mandating disclosure of raw data underlying the existing testimony and exhibits invites de novo review by other professionals or experts when it is well established that "actions of the school systems… cannot be judged exclusively in hindsight." *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). Accordingly, the Court also will not compel disclosure of the materials sought by request (d) above.[6]

### 3.     BSD's Motion to Quash and For Protective Order

BSD, pursuant to Rule 45(d), seeks to quash subpoenas C.L.'s Parents served on Mary Osborn-Whitney and Laura McCosh. (Dkt. 26; Dkt. 27.) Invoking Rule 26(c), BSD also moves for protective orders to prevent C.L.'s Parents from (1) accessing confidential personnel records of BSD employees and (2) deposing BSD employees who were available during the administrative hearing. (*Id.*)

The Court must quash or modify a subpoena that "requires disclosure of… protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). For the purposes of this case, the term "protected matter" includes material that does not

---

[6] Request (d) above corresponds to Parent's Request for Production 11. (Dkt. 30-4 at 10-12).

**MEMORANDUM DECISION AND ORDER - 15**

qualify as additional evidence within the meaning of the IDEA, as detailed in the March Order. Thus, the Court must quash a subpoena that does not seek relevant, non-cumulative, and otherwise admissible evidence.

As noted above, the Court's in camera review revealed nothing in the personnel records of Ms. McCosh and Ms. Osborn-Whitney relevant to C.L.'s Parent's claims. BSD provided affidavits of both paraprofessionals that buttress this conclusion. The affidavits directly contradict Parents' asserted grounds for deposing Ms. McCosh and Ms. Osborn-Whitney—specifically, that they worked with C.L. and could speak to his inappropriate treatment at Hillside Junior High School. (Dkt. 38-4 (Osborn-Whitney); Dkt. 38-5 (McCosh).)[7] Contrary to Parents' assertion that these paraprofessionals could know whether C.L. was mistreated by BSD personnel, (Dkt. 32 at 4), both deny knowledge of any mistreatment, and their personnel records lend credence to their affidavits. Moreover, C.L.'s teacher, Kelsie Badger, testified at length about C.L.'s treatment during the due process hearing, (Dkt. 16-44 at 10-111), and nothing in the paraprofessionals' files or affidavits contradicts that testimony. The Court will quash the subpoenas served on Ms. McCosh and Ms. Osborn-Whitney because their depositions will not produce additional evidence.

For good cause shown, the Court may issue a protective order that forbids the disclosure or discovery of certain matters or materials. Fed. R. Civ. P. 26(c)(1). BSD has shown good cause with respect to the personnel records because, as discussed above, the

---

[7] The Court considers these affidavits only for the limited purpose of corroborating the records provided for in camera review. The Court will not consider the affidavits as additional evidence.

**MEMORANDUM DECISION AND ORDER - 16**

records do not qualify as additional evidence. There is also good cause for a protective order relating to School District employees who were available to testify at the due process hearing.

The Court finds the paraprofessionals who worked with C.L. at Hillside Junior High School were available to testify during the due process hearing. C.L.'s Parents received and offered into evidence behavior logs that included the first names of Marcia Wagner, Mary Osborn-Whitney, and Laura McCosh. (*Exs.* 103 & 105, Dkt. 16.) The logs demonstrate these paraprofessionals knew about C.L.'s behaviors and treatment at Hillside and should at least have prompted inquiry into the paraprofessionals' full names. Parents' argument that BSD was hiding the paraprofessionals' identities defies logic and common sense, especially considering the behavior logs and the close contact between parties in the period leading up to the due process hearing. What C.L.'s Parents characterize as intentional obstruction by BSD, the Court views as a lack of follow-up by Parents. A letter, phone call, or question during one of the many meetings between the parties (or during the due process hearing itself) would have resolved this issue. But, despite ample opportunity and clear notice, C.L.'s Parents failed to act on the information in their possession.[8] Hence, there is good cause for a protective order.

Further, the Court's review of the Ms. McCosh's and Ms. Osborn-Whitney's personnel records supports this decision. Even if C.L.'s Parents had no prior knowledge

---

[8] Parents' counsel was present at many of the IEP team meetings and otherwise heavily involved in the negotiations between Parents and BSD. (Dkt. 16-2 at 11-14.) So this is not a situation where an unrepresented party failed recognize the significance of evidence and develop the administrative record.

**MEMORANDUM DECISION AND ORDER - 17**

of these paraprofessionals' identities, the Court is convinced their depositions would not lead to discovery of additional evidence.

With regard to Marcia Wagner or any other BSD employee, Parents' conduct in this proceeding provides good cause for a protective order. The issue of which BSD employees or personnel files might contain additional evidence is squarely presented in this discovery dispute, and C.L.'s Parents have consistently focused on Ms. Badger, Ms. McCosh, and Ms. Osborn-Whitney. Although C.L.'s Parents apparently intended to depose Ms. Wagner, they later decided not to proceed. (Dkt. 30-16.) No other BSD employees have been mentioned in the context of this discovery dispute. Therefore, the Court will prohibit (a) C.L.'s Parents from deposing any BSD employee available during the administrative hearing and (b) discovery of what otherwise are maintained as confidential personnel records of BSD employees.

## CONCLUSION

C.L's Parents have not shown the discovery they seek to compel would lead to a viable motion to supplement the record. After the Court's in camera review of employment records for School District personnel who worked with C.L., it is clear that these materials are not relevant to the assignments of error in this appeal. In addition, C.L.'s Parents have not carried their burden with regard to raw data, test protocols, test results, or additional behavior logs. The administrative record is replete with references to such materials, and Parents have not persuasively argued that similar relevant evidence was improperly excluded, after-acquired, or otherwise unavailable to them during the due process hearing. Likewise, the Court will prohibit depositions of BSD employees who

MEMORANDUM DECISION AND ORDER - 18

were available, with a modicum of follow-up, at the hearing—not only because Parents did not offer their testimony below, but also because their testimony here would not be relevant, noncumulative, and otherwise admissible. In short, Parents' requests exceed the limited scope of discovery in this matter.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion to Quash Subpoena and for Protective Order (Dkt. 26) and its Supplement (Dkt. 27) are **GRANTED**.

2) Plaintiff's Motion to Compel (Dkt. 30) is **DENIED**.

3) The deadline for motions to supplement the record is **November 8, 2013**.

4) Responses to any new motion to supplement the record shall be due on or before **November 22, 2013**. No replies will be allowed.

Dated: **October 28, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**